1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT

8             FOR THE DISTRICT OF ARIZONA

Brian Allen Wilkins,               )
9                                   )
              Petitioner,           )    CIV 10-00443 PHX JWS (MEA)
10                                  )
              v.                    )    REPORT AND RECOMMENDATION
11                                  )
Suzanne Shirleson, Erica Freeman,  )
12   Arizona Attorney General,      )
                                    )
13            Respondent.           )
                                    )
14   _____  )

15   TO THE HONORABLE JOHN W. SEDWICK:

16          On or about March 1, 2010, Petitioner filed a *pro se*

17   petition seeking a writ of habeas corpus pursuant to 28 U.S.C.

18   § 2254.   The petition for habeas relief is captioned as being

19   filed by an individual on probation, rather than a person in the

20   custody of law enforcement.   Respondents filed an Answer to

21   Petition for Writ of Habeas Corpus ("Answer") (Doc. 31) on July

22   25, 2011.   Petitioner filed a traverse (Doc. 32) on July 30,

23   2011.[1]

24
25
26
_____
27          [1] Petitioner filed a previous section 2254 action, docketed
     as 2:09 CV 00927, which was dismissed for the failure to exhaust the
28   claims raised in the state courts.

**I Procedural History**

    The following information is summarized from Tempe Police DR#08- 123168:
    On July 22, 2008, [Petitioner] was arrested for disorderly conduct, drug offenses, and aggravated assault. The investigation revealed that [Petitioner] had an argument with a neighbor, Michael Wood. [Petitioner] returned to his own apartment. He exited a short time later and discharged his pistol into the air. [Petitioner] then contacted Mr. Wood, allegedly pointed the gun at Mr. Wood's head, and told him he was going to shoot him. As [Petitioner] walked back to his own apartment, he fired two more rounds into the air. After he was detained, police found the handgun, marijuana, and drug paraphernalia in his residence.
    When questioned by police, [Petitioner] admitted shooting the pistol because he felt threatened by Wood's name calling. He denied pointing the gun at anybody, and said [ ] Mr. Wood was threatening him via text messaging. One message said, "Nigger, I'm going to kill you." [Petitioner] admitted the marijuana and paraphernalia were for his personal use. Police noted that he appeared intoxicated.

Answer at 2-3, <u>citing</u> Doc. 7, Exh. 2 at 18-20.

    A Direct Complaint was filed July 24, 2008. An order regarding Petitioner's custody was issued by the Maricopa County Superior Court on July 28, 2008. A motion to modify the terms of Petitioner's release conditions and to reduce the amount of bond was filed on July 30, 2008.

    On July 31, 2008, a grand jury indictment charged Petitioner with unlawful discharge of a firearm, a class 6 dangerous felony (Count 1); disorderly conduct, a class 6 dangerous felony (Count 2); possession or use of marijuana, a class 6 felony (Count 3); and possession of drug paraphernalia,

-2-

1  a class 6 felony (Count 4).    See Doc. 14.    Petitioner was
2  arraigned and a not guilty plea entered on or about August 11,
3  2008.

4          On August 29, 2008, a motion to release Petitioner or
5  to modify the conditions of his release was filed and oral
6  argument requested and, on September 5, 2008, the trial court
7  set the motion for a hearing.  On September 5, 2008, the state
8  filed  notice  of  aggravating  factors  other  than  a  prior
9  conviction and alleging the dangerous nature of a felony.  The
10  state responded to Petitioner's motion for a reduction in his
11  bond on September 9, 2008.  Petitioner was ordered released  to
12  the supervision of pretrial services on September 16, 2008.

13          On March 2, 2009, Petitioner signed a written plea
14  agreement providing Petitioner would plead guilty to one count
15  of disorderly conduct, a class 6 undesignated offense (amended
16  Count 2); and one count of possession of drug paraphernalia, a
17  class 6 undesignated offense (amended Count 4).   See Doc. 3.
18  The plea agreement provided that, with regard to the disorderly
19  conduct  charge,  there  were  no  agreements  as  to  whether
20  Petitioner would be sentenced to prison or placed on probation,
21  and no agreements as to whether the offense would be designated
22  a felony or left undesignated.   Id.

23          The plea agreement further provided that, pursuant to
24  Petitioner's guilty plea to possession of drug paraphernalia,
25  Petitioner would be placed on probation, pay a fine of $1380,
26  including surcharges, and perform not less than 24 hours of
27  community service.   Id.   The plea agreement provided that the

28                            -3-

allegation of discharge of a firearm (Count 1) and possession or use of marijuana (Count 3) and the allegation of dangerousness would be dismissed,

Petitioner was sentenced on March 30, 2009. <u>See</u> Doc. 14. The sentencing court suspended imposition of sentence and placed Petitioner on concurrent one-year terms of probation for each offense, with each offense left "undesignated." <u>Id.</u> Additionally, on amended Count 2, Petitioner was ordered to serve 30 days in the county jail, with credit for 30 days previously served, and further ordered to complete 200 hours of community service. <u>Id.</u>[2] On amended Count 4, Petitioner was ordered to pay a fine of $1380 including surcharges, and perform 24 hours of community service.

Petitioner initiated a timely action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. On July 2, 2009, the trial court issued a minute entry indicating it had received Petitioner's notice of post-conviction relief and that Petitioner had elected to proceed without counsel. <u>See</u> Doc. 7. The state court ordered transcripts of the change of plea and sentencing hearings be prepared as part of the post-conviction proceedings. <u>Id.</u>

On July 13, 2009, Petitioner filed a pro se brief in his Rule 32 action. Petitioner asserted the following claims:

---

[2] Petitioner was taken into custody on the date of the crimes and held on a $54,000 bond. Petitioner's bond was reduced to no bond and he was released after he had been detained for 57 days in custody.

-4-

1.  He was denied his constitutional right to the effective assistance of counsel;

2.  The unconstitutional suppression of evidence by the state;

3. Unlawfully induced plea of guilty or no contest;

4. The abridgement of any other right guaranteed by the constitution of the laws of this state, or the constitution of the United States, including the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution and Article 2 of the Constitution of Arizona.

5. The obstruction by state officials of the right to appeal.  <u>See</u> Doc. 14 at 15–34.

On September 25, 2009, the trial court denied relief in Petitioner's Rule 32 action.  The trial court concluded: "Based upon the matters presented the Court finds that the defendant has failed to show any colorable claim for relief pursuant to Rule 32.1 of the Arizona Rules of Criminal Procedure.[3] It is

---

[3] This rule provides:
   Grounds for relief are:
   a. The conviction or the sentence was in violation of the Constitution of the United States or of the State of Arizona;
   b. The court was without jurisdiction to render judgment or to impose sentence;
   c. The sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;
   d. The person is being held in custody after the sentence imposed has expired;
   e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
   (1) The newly discovered material facts were discovered after the trial.

ordered dismissing the petition pursuant to Rule 32.6(c)[4] of the
Arizona Rules of Criminal Procedure."  Doc. 3.

---

(2)  The defendant exercised due diligence in
securing the newly discovered material facts.
    (3) The newly discovered material facts are not
merely cumulative or used solely for impeachment,
unless the impeachment evidence substantially
undermines testimony which was of critical
significance at trial such that the evidence
probably would have changed the verdict or
sentence.
    f. The defendant's failure to file a notice of
post-conviction relief of-right or notice of
appeal within the prescribed time was without
fault on the defendant's part; or
    g. There has been a significant change in the
law that if determined to apply to defendant's
case would probably overturn the defendant's
conviction or sentence; or
    h. The defendant demonstrates by clear and
convincing evidence that the facts underlying the
claim would be sufficient to establish that no
reasonable fact-finder would have found defendant
guilty of the underlying offense beyond a
reasonable doubt, or that the court would not
have imposed the death penalty.

[4] This Rule provides:
The court shall review the petition within twenty
days after the defendant's reply was due. On
reviewing the petition, response, reply, files
and records, and disregarding defects of form,
the court shall identify all claims that are
procedurally precluded under this rule. If the
court, after identifying all precluded claims,
determines that no remaining claim presents a
material issue of fact or law which would entitle
the defendant to relief under this rule and that
no purpose would be served by any further
proceedings, the court shall order the petition
dismissed. If the court does not dismiss the
petition, the court shall set a hearing within
thirty days on those claims that present a
material issue of fact or law. If a hearing is
ordered, the state shall notify the victims, upon
the victims' request pursuant to statute or court
rule relating to victims' rights, of the time and
place of the hearing.

-6-

1    Petitioner sought review of this decision by the
2  Arizona Court of Appeals, which denied review in a decision
3  issued February 25, 2011.  See Doc. 26.
4    Petitioner contends he is entitled to federal habeas
5  relief because:
6    (1) He was denied his right to a jury trial and his
7  right to a speedy trial;
8    (2) He was denied his right to the effective assistance
9  of counsel;
10    (3) He was denied his right to represent himself during
11  his criminal proceedings, i.e., a "Faretta" rights claim";
12    (4) He was denied his right to due process of law
13  because he was not provided counsel at his arraignment and he
14  was not appointed stand-by counsel for his Rule 32 proceedings;
15    (5) The state violated his right to due process of law
16  by fabricating evidence and using false evidence against
17  Petitioner;
18    (6) He was denied his right to due process and his
19  right to be free of excessive bond;
20    (7) His right to due process of law was violated by the
21  Arizona Superior Court's abuses of discretion;
22    (8) His constitutional rights were violated because the
23  state obstructed his right to a direct appeal of his conviction
24  and sentence;
25    (9) His right to due process of law was violated
26  because he was sentenced "pursuant to an expired plea
27  agreement"; and
28                              -7-

1    (10) He was denied his right to due process of law
2 because the state suppressed exculpatory evidence. <u>See</u> Doc. 4.

3         Respondent asserts that Petitioner procedurally
4 defaulted some of his federal habeas claims in the state courts.
5 Because Petitioner has not established cause and prejudice with
6 regard to his defaulted claims, Respond argues, the Court may
7 not grant habeas relief on those claims. Respondent also
8 contends that Petitioner waived some claims by pleading guilty
9 pursuant to a written plea agreement.

10        Respondent further argues that Petitioner's ineffective
11 assistance of counsel claims and his Faretta claim are without
12 merit. Respondent asserts Petitioner specifically waived his
13 right to appointed counsel in his Rule 32 proceedings and that
14 Petitioner is not entitled to a "hybrid" of self-representation
15 and appointed counsel and that Petitioner waived any right to
16 assert error in his arraignment by pleading guilty. Respondent
17 also contends Petitioner's claim of excessive bond was waived by
18 his guilty plea. Respondent maintains Petitioner procedurally
19 defaulted his claims of judicial impropriety with regard to most
20 of the judges against whom he asserts error and that, with
21 regard to the remaining judge, Petitioner alleges only that this
22 judge violated state rules, which does not state a claim for
23 violation of the federal right to due process of law.

24        **II Applicable law**

25        **A.   Mootness**

26        At the time he filed his petition, Petitioner was
27 presumably still serving a term of probation. However, the

28                                    -8-

Magistrate Judge notes that Petitioner presumably completed serving the concurrent one-year terms of probation imposed on March 30, 2009, on or about March 30, 2010. Because the sentence imposed has been completely served and there are no serious non-speculative collateral consequences of the convictions, the petition is arguably moot. See Zichko v. Idaho, 247 F.3d 1015, 1019 (9th Cir. 2001). Compare Larche v. Simons, 53 F.3d 1068, 1069 (9th Cir. 1995).

Article III, § 2 of the Constitution requires the existence of a case or controversy through all stages of a federal judicial proceeding. Accordingly, throughout the entire proceedings, the petitioner "must have suffered, or be threatened with, an actual injury ... likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 983 (1998), quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 1253-54 (1990). See also Olson v. Hart, 965 F.2d 940, 943 (10th 1992).

However, Respondents have not argued that the petition is moot. Accordingly, the Magistrate Judge will proceed with a further analysis of Petitioner's entitlement to habeas relief.

**B. Exhaustion and procedural default**

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state the

opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v.Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).[5]

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).  See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary."  Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001).  See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003).  The Supreme Court reiterated in Baldwin v. Reese that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors.  See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004).

---

[5] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief.  However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2) (1994 & Supp. 2010).

-10-

Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific <u>federal</u> constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. <u>See</u>, <u>e.g.</u>, <u>id.</u>, 541 U.S. at 33, 124 S. Ct. at 1351.[6]

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2010). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. <u>See</u>, <u>e.g.</u>, <u>id.</u>, 548 U.S. at 92, 126 S. Ct. at 2387.

---

[6] A petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 278, 92 S. Ct. 509, 513-14 (1971); <u>Libberton v. Ryan</u>, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. <u>See</u> <u>Scott v. Schriro</u>, 567 F.3d 573, 582 (9th Cir. 2009); <u>Lopez v. Schriro</u>, 491 F.3d 1029, 1040 (9th Cir. 2007). Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, <u>Picard</u>, 404 U.S. at 277-78, 92 S. Ct. at 512-13, they must do more than present the facts necessary to support the federal claim. <u>See</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

-11-

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351-52, 109 S. Ct. at 1060. Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted but procedurally defaulted any claim not previously fairly presented to the Arizona Court of Appeals in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar).

1    **C. Cause and prejudice**

2    The Court may consider the merits of a procedurally
3    defaulted claim if the petitioner establishes cause for their
4    procedural default and prejudice arising from that default.
5    "Cause" is a legitimate excuse for the petitioner's procedural
6    default of the claim and "prejudice" is actual harm resulting
7    from the alleged constitutional violation. See Thomas v. Lewis,
8    945 F.2d 1119, 1123 (9th Cir. 1991). Under the "cause" prong
9    of this test, Petitioner bears the burden of establishing that
10   some objective factor external to the defense impeded his
11   compliance with Arizona's procedural rules. See Moorman v.
12   Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v.
13   Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez-Villareal
14   v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996). To establish
15   prejudice, the petitioner must show that the alleged error
16   "worked to his actual and substantial disadvantage, infecting
17   his entire trial with error of constitutional dimensions."
18   United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595
19   (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415-16
20   (9th Cir. 1998).

21   Generally, a petitioner's lack of legal expertise is
22   not cause to excuse procedural default. See Hughes v. Idaho
23   State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).
24   Additionally, to establish prejudice, the petitioner must show
25   that the alleged constitutional error worked to his actual and
26   substantial disadvantage, infecting his entire trial with
27   constitutional violations. See Vickers, 144 F.3d at 617;

28

Correll, 137 F.3d at 1415-16. Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135-36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).

### D. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice. See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged. See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

**E. Standard of review**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d) (1994 & Supp. 2010); <u>Carey v. Musladin</u>, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); <u>Musladin v. Lamarque</u>, 555 F.3d 834, 838 (9th Cir. 2009). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); <u>Crittenden v. Ayers</u>, 624 F.3d 943, 950 (9th Cir. 2010); <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. <u>See</u>, <u>e.g.</u>, <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004).

> A state court decision is contrary to clearly established federal law if it arrives at a conclusion of law opposite to that of the Supreme Court or reaches a result different from the Supreme Court on materially

> indistinguishable facts. <u>Taylor v. Lewis</u>,
> 460 F.3d 1093, 1097 n.4 (9th Cir. 2006). A
> state court decision involves an unreasonable
> application of clearly established federal
> law if it correctly identifies a governing
> rule but applies it to a new set of facts in
> a way that is objectively unreasonable, or if
> it extends, or fails to extend, a clearly
> established legal principle to a new set of
> facts in a way that is objectively
> unreasonable. <u>Id.</u> An unreasonable
> application of federal law is different from
> an incorrect application of federal law. <u>Id.</u>

<u>McNeal v. Adams</u>, 623 F.3d 1283, 1287-88 (9th Cir. 2010), <u>cert. denied</u>, 79 U.S.W.L. 3727 (June 27, 2011) (No. 10-10109).

For example, a state court's decision is considered contrary to federal law if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. <u>See</u> <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419 (2009); <u>Wright v. Van Patten</u>, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008); <u>Norris v. Morgan</u>, 622 F.3d 1276, 1288 (9th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1557 (2011). <u>See also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 737 (9th Cir. 2008); <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." <u>Ramdass v. Angelone</u>, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). <u>See also</u> <u>Cheney v. Washington</u>, 614 F.3d 987, 994 (9th Cir. 2010); <u>Cook v. Schriro</u>, 538 F.3d 1000, 1015 (9th Cir. 2008). However, the state court's decision is an

unreasonable application of clearly established federal law only

if it can be considered objectively unreasonable.  See, e.g.,

Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).  An unreasonable

application of law is different from an incorrect one.  See id.;

Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005).[7]

> A state court's determination that a claim
> lacks merit precludes federal habeas relief
> so long as "fairminded jurists could
> disagree" on the correctness of the state
> court's decision.  Yarborough v. Alvarado,
> 541 U.S. 652, 664, 124 S. Ct. 2140, []
> (2004).  And as this Court has explained,
> "[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations." Ibid. "[I]t
> is not an unreasonable application of clearly
> established Federal law for a state court to
> decline to apply a specific legal rule that
> has not been squarely established by this
> Court." Knowles v. Mirzayance, [] 129 S.Ct.
> 1411, 1413-14, [] (2009) (internal quotation
> marks omitted).

Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  See also

Howard v. Clark, 608 F.3d 563, 567-68 (9th Cir. 2010).

Additionally, the United States Supreme Court recently

held that, with regard to claims adjudicated on the merits in

the state courts, "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the

claim on the merits."  Cullen v. Pinholster, 131 S. Ct. 1388,

1398 (2011).

---

[7] "That test is an objective one and does not permit a court
to grant relief simply because the state court might have incorrectly
applied federal law to the facts of a certain case."  Adamson v.
Cathel, 633 F.3d 248, 255-56 (3d Cir. 2011).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. <u>See</u> <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59 (2007); <u>Greenway v. Schriro</u>, ___ F.3d ___, 2011 WL 3195310, at *14 (9th Cir.); <u>Norris</u>, 622 F.3d at 1286; <u>Howard</u>, 608 F.3d at 568.

**III Analysis**

**A.  Respondents assert that Petitioner waived several of his habeas claims by pleading guilty and Petitioner contends his guilty plea was invalid because the plea agreement had "expired" before the date the plea was signed by Petitioner**

As a preliminary matter, Respondents contend that Petitioner waived several of his habeas claims by signing a written plea agreement.

Throughout his habeas petition and his reply to the answer to his petition, Petitioner contends that his constitutional rights were violated and his conviction must be vacated and the charges against him must be dismissed because the written plea agreement had "expired" on the date the agreement was signed by Petitioner. Petitioner does not explicitly assert that he involuntarily entered into the plea agreement, but instead emphasizes that his counsel was ineffective and incompetent with regard to advising Petitioner

-18-

to sign the agreement and that counsel pressured Petitioner into signing the agreement.  Petitioner alleges his public defender was incompetent, *inter alia*, because counsel had "thousands" of cases assigned to him in a year, and because counsel did not spend enough time with Petitioner or spend enough time investigating Petitioner's case.

The written plea agreement was dated as signed by Petitioner's counsel on March 2, 2006 (the year is apparently an error by counsel), and was dated as signed by the prosecutor on September 9, 2008, and was dated as signed by Petitioner on March 2, 2009.  The plea agreement states on the first page that the "offer" expires and is revoked if not accepted by October 22, 2008.  The typed October date is scratched-out and the date March 2, 2009, is written by hand next to the 2008 date.

Additionally, the plea agreement states that by accepting the agreement Petitioner waived all motions and defenses with regard to the entry of judgment and that Petitioner also was expressly waiving the right to a direct appeal.  The plea agreement also provided that several charges against Petitioner would be dismissed.  As a result of the plea agreement Petitioner received less than the maximum sentence with regard to both jail time and fines on both convictions.

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'"  Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405-06 (2005), quoting

-19-

Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69 (1970). The United States Supreme Court greatly limited the grounds upon which a state prisoner may seek habeas relief after entering a voluntary and intelligent guilty plea in Tollett v. Henderson, 411 U.S. 258, 93 S. Ct. 1602 (1973) (holding that a knowing and voluntary guilty plea waives all non-jurisdictional defects occurring prior to the entry of the guilty plea).

Following Tollett, the federal courts have concluded that a plea colloquy must satisfy several requirements in order for a guilty plea to be considered voluntary and knowing. See, e.g., Tanner v. McDaniel, 493 F.3d 1135, 1146-47 (9th Cir. 2007). A guilty plea is not considered voluntary and knowing unless a defendant is informed of and waives his privilege against self-incrimination, his right to trial by jury, and his right to confront witnesses. Id., 493 F.3d at 1147, citing Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712-13 (1969). A defendant must understand the consequences of his plea, including "the range of allowable punishment that will result from his plea." Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006).

The transcript of the pre-trial settlement conference[8] and Petitioner's plea colloquy are attached to Respondents'

---

[8] At the beginning of the settlement conference Petitioner was advised that the purpose of the settlement conference was to see if the parties could reach a settlement, to allow Petitioner to know what evidence the state would present if Petitioner went to trial, to give Petitioner an opportunity to ask questions of the settlement judge and prosecutor with his counsel present, and to help Petitioner decide if he wanted to accept the plea agreement or reject the agreement and proceed to trial. See Answer, Exh. B at 3.

answer to the petition as Exhibit B and Exhibit C. The settlement conference was conducted on March 2, 2009. At the settlement conference Petitioner acknowledged he had no prior felony convictions and volunteered that he had been convicted of a misdemeanor DUI in 2001.[9] The prosecutor stated he believed Petitioner had been undercharged and that the circumstance indicated an aggravated assault, i.e., a witness stated she would testify Petitioner argued with the victim and that Petitioner held a gun to the victim's head. The prosecutor stated that, given the actual circumstances of the crime, i.e., that Petitioner had arguably been verbally provoked into an argument with the victim, he would advocate for a sentence of probation should Petitioner accept the plea.

At the settlement conference Petitioner re-stated that he believed the truth was "on [his] side" although he also believed that the victim and a witness would testify contrary to the truth should he go to trial, and that his primary concern was how to "get this thing done." Petitioner further acknowledged that he would not be able to attend law school because of "felony charges" which would make him ineligible for financial aid; Petitioner acknowledged that the fact of the

_____

[9] A criminal history report in the record produced by Maricopa County on March 2, 2009, indicates that in 2000 Petitioner was convicted of a misdemeanor, i.e., DUI in Iowa, on May 29, 2000, and that Petitioner served two days in jail pursuant to this conviction. The criminal history report also states that in 2005 Petitioner was charged with a civil violation, i.e., obtaining a game or fishing license by fraud, for which violation Petitioner paid a fine.

conviction would not prevent him from being accepted to law school, but would prohibit him from receiving the financial aid necessary to attend. The hearing judge explained the range of potential sentences with and without the plea agreement and repeatedly told Petitioner that accepting the plea or not accepting the plea agreement was "completely up to you."[10]

At that time, i.e., immediately after the settlement conference, Petitioner chose to go on the record before the judge and enter a guilty plea as provided in the plea agreement. During the settlement conference and during the immediately subsequent plea hearing Petitioner never pointed out or complained or raised the issue that the plea agreement had "expired" or was otherwise "illegal". Petitioner agreed to plead guilty to disorderly conduct and to possession of paraphernalia and the state agreed to dismiss the charge of possession of marijuana and the count of discharge of a weapon and the allegation of dangerousness. At the hearing it was explained to Petitioner that the only realistic possibility of serving additional jail time was predicated on the finding of dangerousness, i.e., that Petitioner had discharged a gun three times into the air, a fact which Petitioner does not even now dispute, although Petitioner argues that his actions were justified because they were provoked by the victim.

---

[10] At that time Petitioner was "ten hours shy" of completing a bachelor's degree and Petitioner averred to the state court that he had registered for the fall semester of classes.

Petitioner stated that he had read the plea agreement, that he understood the plea agreement, that he understood he was giving up his right to a direct appeal. The judge told Petitioner if he accepted the plea agreement he was waiving his right to a jury trial, his right to remain silent, his right to confront witnesses, and his right to be presumed innocent.

Petitioner's sentencing hearing was conducted March 30, 2009. When asked if he had anything to say at that hearing, Petitioner stated that he did not have anything to say.

Petitioner's unsupported statements in his federal habeas pleadings that his guilty plea was not voluntary do not supply the "clear and convincing evidence" standard necessary for the Court to conclude that Petitioner's plea was not knowing or voluntary. Petitioner's contemporaneous statements regarding his understanding of the plea agreement carry substantial weight in determining if his entry of a guilty plea was knowing and voluntary. See Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"); Doe v. Woodford, 508 F.3d 563, 571 (9th Cir. 2007); Restucci v. Spencer, 249 F. Supp. 2d 33, 45 (D. Mass. 2003) (collecting cases so holding).

Because Petitioner stated at the time of his guilty plea that the plea was knowing and voluntary, the Court concludes that, as a matter of fact, the plea was voluntary and

knowing. <u>See</u>, <u>e.g.</u>, <u>Chizen v. Hunter</u>, 809 F.2d 560, 562 (9th Cir. 1986). Accordingly, any federal habeas claim that Petitioner was deprived of his constitutional rights may be properly denied on the merits.

Additionally, with regard to Petitioner's contention that his plea was not knowing and voluntary because he was allegedly told by his counsel or otherwise led to believe his sentences would be designated as misdemeanors at the time of sentencing, a state court's factual finding that a plea was voluntary and knowing is entitled to a presumption of correctness by a federal habeas court. <u>See</u> <u>Lambert v. Blodgett</u>, 393 F.3d 943, 982 (9th Cir. 2004); <u>Cunningham v. Diesslin</u>, 92 F.3d 1054, 1060 (10th Cir. 1996). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. <u>See</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 125 S. Ct. 2317, 2325 (2005); <u>Anderson v. Terhune</u>, 467 F.3d 1208, 1212 (9th Cir. 2006); <u>Solis v. Garcia</u>, 219 F.3d 922, 926 (9th Cir. 2000).

Petitioner's assertion that, because the plea agreement had "expired," Petitioner's plea must be vacated and he would thereby be rendered innocent, does not provide a basis for federal habeas relief. Petitioner does not cite to any published legal opinion so holding. A plea agreement may be vacated by a habeas court when a term of the plea agreement has been violated, such as when a prosecutor does not advocate for a sentence as promised in the agreement. The fact that the

-24-

typed date on the written plea agreement was changed to accommodate Petitioner's accepting of the plea on the date of the settlement conference is not a due process violation or a basis for concluding that there has been a fundamental miscarriage of justice. Neither does this fact establish that there are collateral consequences arising from the potential dismissal of Petitioner's habeas action on the ground of mootness.[11] A criminal defendant's right to due process extends only insofar as to enforce the terms of his plea agreement. See, e.g., Santobello v. New York, 404 U.S. 257, 261-62, 92 S. Ct. 495, 498 (1971). When a promise on which a guilty plea rests is violated, the remedy is either specific performance of the plea agreement or the opportunity to withdraw the guilty plea. Id., 404 U.S. at 262-63, 92 S. Ct. 495. See also Buckley v. Terhune, 441 F.3d 688, 698-99 n.11 (9th Cir. 2006); Julian v. Bartley, 495 F.3d 487, 499-500 (7th Cir. 2007); Horton v. Bomar, 335 F.2d 583, 584 (6th Cir. 1964). Were the Court to find, hypothetically, that the plea agreement in this matter was invalid for some reason, Petitioner would not be entitled to dismissal of the charges, but to withdraw his guilty plea and again stand charged with the counts stated in the indictment and again face jeopardy therefrom.

_____

[11] Another judge in the United States District Court for the District of Arizona rejected a similar claim regarding an "expired" plea agreement in Farrall v. Schriro, 2010 WL 4269567, at *26.

**B.  Petitioner's specific claims for relief other than his general assertion that the plea agreement is void because it had "expired".**

**1. Petitioner asserts he is entitled to federal habeas relief because he was denied his right to a jury trial and his right to a speedy trial.**

Petitioner asserts that he exhausted this claim by raising it in his state Rule 32 action.  Petitioner argues that the trial court violated his federal constitutional right to a jury trial and his right to a speedy trial when the court sua sponte continued his trial on January 12, 2009.

In his state Rule 32 action Petitioner did not expressly state either a federal speedy trial claim or that he had been denied his federal constitutional right to a jury trial.  Petitioner did allude to his federal constitutional right to a fair trial and to due process of law.  Vague references, however, are insufficient to exhaust a federal habeas claim in the state courts.  <u>See</u>, <u>e.g.</u>, <u>Fields v. Waddington</u>, 401 F.3d 1018, 1021-22 (9th Cir. 2005); <u>Casey v. Moore</u>, 386 F.3d 896, 913-14 (9th Cir. 2004).

Petitioner has not established cause and prejudice for his failure to properly exhaust some of his habeas claims in the state courts.  In response to the answer to his petition, Petitioner asserts that the plea agreement was expired and illegal and, accordingly, that the merits of all his claims must be addressed and that his convictions and sentences be vacated.  These assertions do not constitute cause and prejudice for Petitioner's procedural default.  Nor has Petitioner established that a fundamental miscarriage of justice will occur absent a

consideration of the merits of his defaulted claims.

Additionally, having concluded that Petitioner's guilty plea was knowing and voluntary, Petitioner's claim is precluded because Petitioner expressly waived his right to a jury trial in the written plea agreement and at his plea colloquy.

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers.

Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969) (internal citations omitted).

Similarly, Petitioner waived his right to object to any violation of his right to a speedy trial by entering into the plea. The Sixth Amendment's provision of a "right to a speedy and public trial ..." applies to state court proceedings pursuant to the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 222-23, 87 S. Ct. 988, 993 (1967). However, the federal courts have concluded that a defendant who "knowingly, intelligently and voluntarily" enters a guilty plea waives the right to challenge his conviction on speedy trial grounds, a non-jurisdictional defect. See Tollett, 411 U.S. at 267, 93 S. Ct. at 1608; Becker v. Nebraska, 435 F.2d 157 (8th Cir. 1970) ("A voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects[,] ... [and] the right to a speedy trial is non-jurisdictional in nature."); Ralbovsky v.

-27-

Kane, 407 F. Supp. 2d 1142, 1152-53 (C.D. Cal. 2005) (holding a guilty plea waived the petitioner's claim that counsel was ineffective for failing to appear at arraignments). Compare Doggett v. United States, 505 U.S. 647, 657 n.3, 112 S. Ct. 2686, 2694 n.3 (1992) (noting a Sixth Amendment speedy trial claim was preserved by a conditional guilty plea).

Furthermore, the delay in Petitioner's criminal proceedings was not so lengthy or prejudicial as to implicate his federal constitutional rights. The Supreme Court articulated a four-part test to determine when government delay has abridged the Sixth Amendment right to a speedy trial in Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). The factors to be considered include: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice caused by the delay. No single factor is necessary or sufficient. Id. The first factor, the length of delay, is a threshold issue, and unless the length of delay is presumptively prejudicial, the Court need not review the remaining factors. See United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). The delay in Petitioner's criminal proceedings was not so lengthy as to violate his constitutional rights.[12] See Stuard

---

[12] The Supreme Court has instructed the lower courts to break this inquiry into two steps. See Doggett, 505 U.S. at 651-52; Beamon, 992 F.2d at 1012. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. Barker, 407 U.S. at 530; Beamon, 992 F.2d at 1012. Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. Doggett, 505 U.S. at 652, n.1. If this threshold is not met, the

-28-

v. Stewart, 401 F.3d 1064, 1068 (9th Cir. 2005); Norris v. Schotten, 146 F.3d 314, 328 (6th Cir. 1998). Compare McNeely v. Blanas, 336 F.3d 822, 829 (9th Cir. 2003).

Accordingly, this claim may be denied on the merits regardless of any failure to properly exhaust the claim.

**2. Petitioner contends he was denied his right to the effective assistance of counsel.**

Petitioner exhausted an ineffective assistance of counsel claim in the state courts. In his state Rule 32 action Petitioner alleged that the first public defender assigned to him (Mr. Brown) was overworked, did not return Petitioner's calls, and did not move at Petitioner's arraignment for modified release conditions. Petitioner asserts that the second public defender assigned to represent him (Mr. Ziemba) was ineffective because he unnecessarily delayed a trial and did not object when the judge set a settlement conference at a time when Petitioner expected the judge to set a trial date. Petitioner contends that, when he asked counsel to move the court to dismiss the charges because Petitioner's right to a speedy trial had been denied, counsel told Petitioner a speedy trial argument would not be successful.

Additionally, Petitioner alleges that his counsel coerced him to sign the plea agreement, telling Petitioner he would go to prison if he did not agree to the plea and telling

---

Court need not proceed with the other Barker factors. Id. at 651-52; Barker, 407 U.S. 530; Beamon, 992 F.2d at 1012.

Petitioner that the court would designate the offenses as misdemeanors if Petitioner signed the plea. Petitioner asserts he only signed the plea agreement because he had been denied his right to a trial in January of 2009, because counsel was not willing to undertake a trial, and because Petitioner felt he was physically and emotionally unable to wait until summer of 2009 for a trial. With regard to being prejudiced by counsel's errors, Petitioner asserts he would have been acquitted at trial or convicted only of misdemeanors had counsel not coerced Petitioner into the plea agreement.

> The "clearly established Federal law, as determined by the Supreme Court of the United States" at issue in this case is the test for ineffective assistance of counsel claims set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, [] (1984), and in <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, [] (1985). Under <u>Strickland</u>, to establish a claim of ineffective assistance of counsel, the petitioner must show (1) grossly deficient performance by his counsel, and (2) resultant prejudice. 466 U.S. at 687, 104 S.Ct. 2052. In <u>Hill</u>, the Supreme Court adapted the two-part <u>Strickland</u> standard to challenges to guilty pleas based on ineffective assistance of counsel, holding that a defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must show that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 57-59, 106 S. Ct. 366.

<u>Womack v. Del Papa</u>, 497 F.3d 998, 1002 (9th Cir. 2007).

Even if Petitioner's counsel's performance was somehow ineffective with regard to the consequences of his plea, i.e.,

-30-

that the charges would be designated as misdemeanors at the time of sentencing, Petitioner was not prejudiced by his counsel's prediction because the plea agreement and the state court alerted Petitioner to the potential consequences of his guilty plea. <u>See</u> <u>Womack</u>, 497 F.3d at 1003, <u>citing</u> <u>Doganiere v. United</u> <u>States</u>, 914 F.2d 165, 168 (9th Cir. 1990) (holding that the petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court").

Additionally, to succeed on a claim that his counsel was constitutionally ineffective regarding a guilty plea, a petitioner must show that his counsel's advice as to the consequences of the plea was not within the range of competence demanded of criminal attorneys. <u>Hill</u>, 474 U.S. at 58, 106 S. Ct. at 369. A lawyer's advice to plead guilty in the face of strong inculpatory evidence does not constitute ineffective assistance of counsel. <u>See</u> <u>Schone v. Purkett</u>, 15 F.3d 785, 790 (8th Cir. 1994); <u>Jones v. Dugger</u>, 928 F.2d 1020, 1028 (11th Cir. 1991).

> [A] defendant has the right to make a reasonably informed decision whether to accept a plea offer. In <u>McMann v. Richardson</u>, the seminal decision on ineffectiveness of counsel in plea situations, the Court described the question as not whether "counsel's advice [was] right or wrong, but ... whether that advice was within the range of competence demanded of attorneys in criminal cases." <u>McMann</u>, 397 U.S. at 771, 90 S.Ct. 1441, []. Thus, for [the petitioner] to establish a claim of ineffective assistance, he "must demonstrate gross error on the part

-31-

of counsel...." _Id._ at 772, 397 U.S. 759, 90 S. Ct. 1441, [].

_Turner v. Calderon_, 281 F.3d 851, 880 (9th Cir. 2002) (some internal citations and quotations omitted).

Petitioner has not made such a showing in this matter. The transcript of the settlement hearing held just prior to Petitioner deciding to accept the plea agreement and enter a guilty plea that day, and the transcript of Petitioner's sentencing proceeding, indicate Petitioner's decision to accept the plea was reasonably informed and his decision alone. The state court's summary conclusion that Petitioner was not denied his right to the effective assistance of counsel was not clearly contrary to federal law and Petitioner is not entitled to habeas relief on this claim.

**3. Petitioner maintains he was denied his right to represent himself during his criminal proceedings, i.e., a "Faretta" rights violation".**

Petitioner asserted in his Rule 32 action that the trial court improperly ignored letters from Petitioner regarding the amount of his bond because the requests were not formal motions filed by Petitioner's appointed counsel. In his federal habeas action Petitioner asserts that his counsel's failure to file such requests resulted in Petitioner being incarcerated for two months before his $54,000 bond was reduced to no bond and Petitioner was released.[13]

---

[13] Petitioner alleges he sent two letters to the state trial court, seeking his release from custody by having the state court lower his bond from $54,000 to no bond. Petitioner was released on a motion brought by counsel and opposed by the state on September 16,

Petitioner, arguably, raised a Faretta claim in his state Rule 32 action. The state court's conclusion that Petitioner was not entitled to relief was not clearly contrary to federal law.

Petitioner had a "Faretta" right to self-representation during his criminal proceedings, which right he did not clearly and unequivocally exercise, nor was that right violated by the trial court's preclusion of Petitioner's filing of pro se motions. See McCormick v. Adams, 621 F.3d 970, 976 (9th Cir. 2010); Akins v. Easterling, ___ F.3d ___, 2011 WL 3366239, at *10 (6th Cir. Aug. 5, 2011); Washington v. Renico, 455 F.3d 722, 734 (6th Cir. 2006); Gamble v. Secretary, Florida Dep't of Corr., 450 F.3d 1245, 1249 (11th Cir. 2006); Munkus v. Furlong, 170 F.3d 980, 983-84 (10th Cir. 1999). Compare Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000); Shafer v. Bowersox, 329 F.3d 637, 647-48 (8th Cir. 2003).

Petitioner has not established that his right to represent himself in his criminal proceedings was violated and he is not entitled to relief on the merits of this claim.

---

2008, approximately 57 days after Petitioner was taken into custody and Petitioner continued to be represented by counsel through his settlement hearing and his plea colloquy without complaint from Petitioner.

**4. Petitioner argues he was denied his right to due process of law because the he was not provided counsel at his arraignment and he was not appointed stand-by counsel for his Rule 32 proceedings.**

Petitioner asserts he was denied his right to counsel at his arraignment because Petitioner's appearance was telephonic and his counsel was not at the jail. Petitioner also contends he was denied his right to counsel because he was not provided "stand by" counsel in his Rule 32 proceedings, in which Petitioner elected to represent himself. Petitioner did not exhaust these claims in the state courts.

In response to the answer to his petition, Petitioner asserts that the plea agreement was expired and illegal and, accordingly, that the merits of all his claims must be addressed and that his convictions and sentences be vacated. Having found that the plea agreement was not rendered involuntary and unknowing by virtue of the plea agreement being "expired" or otherwise, the Magistrate Judge has determined that Petitioner is bound by the plea agreement and has waived all claims other than that the plea agreement was not knowing or involuntary. Accordingly, the Court should deny relief on this claim.

At the initiation of his Rule 32 proceedings Petitioner expressly informed the state court that he wished to represent himself in those proceedings, effectively waiving his right to appointed counsel for his Rule 32 action. See Speights v. Frank, 361 F.3d 962, 964-65 (7th Cir. 2004) (noting that much less process is required when a defendant chooses to exercise their right to self-representation during appeal, as compared to

before they are convicted). Additionally, Petitioner's assertion that he was denied his right to "stand by counsel" for his state Rule 32 proceedings does not state a claim for habeas relief. A state criminal defendant does not have a federal constitutional right to "stand by" counsel because the United States Supreme Court has never held that a state criminal defendant is constitutionally entitled to the effective assistance of "standby" or advisory counsel. See Williams v. Stewart, 441 F.3d 1030, 1047 n.6 (9th Cir. 2006); Wilson v. Parker, 515 F.3d 682, 697 (6th Cir. 2008). The Circuit Courts of Appeal have uniformly concluded that an indigent criminal defendant does not have the right to either counsel of his own choosing or "hybrid" representation. See, e.g., Wilson, 515 F.3d at 696; Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006). See also John-Charles v. California, ___ F.3d ___, 2011 WL 2937945, at *5-*6 (July 22, 2011).

Petitioner also asserts that he was denied his right to counsel because, at his arraignment, Petitioner appeared via closed-circuit camera and Petitioner's attorney was in the courtroom. Petitioner cites to no published opinion of the United States Supreme Court which holds that such representation violated Petitioner's federal constitutional right to the effective assistance of counsel in all critical stages of the proceedings, and the Magistrate Judge can find no such opinion. The Magistrate Judge further concludes that Petitioner waived this claim by pleading guilty and thereby waiving all pre-plea non-jurisdictional defects with regard to the entry of judgment

1 and sentencing.

2      **5. Petitioner contends the state violated his right to**
**due process of law by fabricating evidence and using false**
3 **evidence against Petitioner.**

4      Petitioner alleges the state fabricated evidence of a

5 prior conviction and alleged "multiple victims" as a result of

6 the charged crimes. Petitioner contends the state did not

7 "disclose" the information that, at the time of the crimes the

8 victim was on probation, that petitioner's gun was legally

9 owned, and that the victim sent Petitioner threatening text

10 messages. Petitioner states this evidence was suppressed in

11 his Rule 32 proceedings and that these facts were evidence that

12 his Rule 32 claims were meritorious and should not have been

13 dismissed as precluded or waived.

14      Petitioner asserts constitutional error with regard to

15 the state's actions in his state action for post-conviction

16 relief. Petitioner has not stated a claim for habeas relief.

17      The Supreme Court [has] held that a State's
     process for postconviction relief is
18      constitutionally adequate unless it "offends
     some principle of justice so rooted in the
19      traditions and conscience of our people as to
     be ranked as fundamental," or "transgresses
20      any recognized principle of fundamental
     fairness in operation." <u>Id.</u> at 2320 (quoting
21      <u>Medina v. California</u>, 505 U.S. 437, 446, 448,
     112 S.Ct. 2572, 2577-78, 120 L.Ed.2d 353
22      (1992)). Federal courts may not interfere
     unless the State's process is "fundamentally
23      inadequate to vindicate the substantive
     rights provided." <u>Id.</u>

24

25 <u>Cunningham v. District Attorney's Office for Escambia County</u>,

26 592 F.3d 1237, 1260-61 (11th Cir. 2010).

27

28                     -36-

**6. Petitioner contends he was denied his right to due process and his right to be free of excessive bond.**

Petitioner asserts that the amount of bond set was unreasonably high because he had no prior criminal history and was a college student. Petitioner asserts that his bond was set high because the crime was reported by the local media as an attack on a white male by a black male. Petitioner contends that the amount of his bond prohibited him from effectively investigating his case and representing himself.

Petitioner did not raise this claim in his state action for post-conviction relief and Petitioner has not shown cause and prejudice regarding the procedural default of this claim. Additionally, Petitioner waived any claim regarding the amount of his bond when he pled guilty. See Mitchell v. Superior Court, 632 F.2d 767, 769 (9th Cir. 1980) ("As a general rule, one who has voluntarily and intelligently pled guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations."); Lambert v. United States, 600 F.2d 476, 477-78 (5th Cir. 1979).

**7. Petitioner alleges his right to due process of law was violated by the Arizona Superior Court's abuses of discretion.**

Petitioner contends that several Superior Court judges acted to abuse their discretion when processing his criminal proceedings, including signing orders in his case when the signing judge was not the assigned judge, sentencing him pursuant to an "expired" plea agreement, and dismissing his Rule 32 action despite, Petitioner asserts, the presentation of

-37-

timely and meritorious claims. Petitioner also asserts a Superior Court judge abused his discretion by failing to address Petitioner's pro se motion to release him without bond.

Petitioner's claims of pretrial judicial error were waived by his plea agreement. Additionally, Petitioner's claims that various state court judges abused their discretion or that they did not strictly comply with the Arizona Rules of Criminal Procedure in Petitioner's post-conviction proceedings do not state a claim for federal habeas relief because Petitioner's claims of error do not constitute a claim that his federal constitutional right to due process of law was violated. See Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995); Landrum v. Mitchell, 625 F.3d 905, 927-28 (6th Cir. 2010); Lucas v. McBride, 505 F. Supp. 2d 329, 355 (N.D.W. Va. 2007) (holding a state court's abuse of discretion in not granting a continuance was not cognizable). Likewise, infirmities in state post-conviction relief proceedings cannot serve as the basis for federal habeas relief. Violations of state law or state criminal procedure which do not infringe upon specific federal constitutional protections are not cognizable under section 2254. See, e.g., Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. See Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Bryant v. Maryland, 848 F.2d 492 (4th Cir. 1988).

Therefore, the claims raised in Ground VII of the habeas petition may be denied because Plaintiff has failed to state a claim for relief cognizable in a section 2254 action.

**8. Petitioner alleges his constitutional rights were violated because the state obstructed his right to a direct appeal of his conviction and sentence.**

Petitioner asserted in his Rule 32 action that his right to an appeal was blocked by the actions by his probation officer, who Petitioner alleges threatened Petitioner in retaliation for Petitioner telling the officer he intended to appeal his convictions and sentences.

As iterated supra, Petitioner specifically waived his right to a direct appeal of his convictions and sentences in both the written plea agreement and in his plea colloquy. The Magistrate Judge has found that the waiver was knowing and voluntary. Accordingly, regardless of any action by Petitioner's probation officer, this claim should be denied on the merits of the claim.

**9. Petitioner contends his right to due process of law was violated because he was sentenced "pursuant to an expired plea agreement".**

Petitioner did not allege this habeas claim in his state Rule 32 action. Petitioner has not shown cause for, nor prejudice arising from his procedural default of this claim.

In traverse, Petitioner argues:

> The Petitioner has diligently, aggressively, and progressively represented himself throughout this entire ordeal (except for when Arizona would not respect this right), and has presented valid claims which support granting habeas relief. Throughout the past three years, Petitioner has learned that case

> law and courts are extremely coded and
> complicated, and that state governments will
> fight until the last drop of blood is
> squeezed from petitioners, to keep said
> individuals unconstitutionally convicted of
> felonies. Petitioner respectfully requests
> the Court grant habeas relief and order the
> State of Arizona to dismiss the criminal
> charges, with prejudice, against the
> Petitioner.

Petitioner has not established cause and prejudice with regard to the procedural default of this claim. Nor does Petitioner argue his actual innocence of the charges, i.e., that he did not possess drug paraphernalia or that he did not discharge a gun. Accordingly, the Court should not consider the merits of Petitioner's claim that the plea agreement was invalid because it had "expired" when signed by Petitioner.

**10. Petitioner maintains he was denied his right to due process of law because the state suppressed exculpatory evidence.**

In his state Rule 32 action Petitioner asserted that the state had "unconstitutionally" suppressed "evidence" that the victim was on probation at the time of the incident, that the victim had attempted to extort Petitioner, and that Petitioner was the legal owner of the weapon which was discharged.

In his habeas petition Petitioner asserts that his constitutional rights were denied when, after his convictions and sentences had been entered, he asked to see the grand jury transcripts. Petitioner contends the state wrongfully failed to inform the jury that the victim was intoxicated and on probation at the time of the incident and that the victim had threatened

Petitioner.  Petitioner does not explain how this violated his
right to due process of law or cite to any case with regard to
a violation of his right to due process in this regard.    In
Petitioner's traverse he alleges that the state suppressed
evidence in the course of his Rule 32 action.   Petitioner
alleges that the state suppressed grand jury transcripts and
records from the public defender's office which would have
established that he was entitled to post-conviction relief.

Petitioner waived any claim with regard to
improprieties in the grand jury proceeding when he pled guilty.
To the extent Petitioner asserts that the state violated his
right to due process during his Rule 32 proceedings by not
producing the grand jury transcripts, Petitioner has failed to
state a claim for relief.   See Cooper v. Neven, 641 F.3d 322,
331-32 (9th Cir. 2011); Cunningham v. District Attorney's Office
for Escambia County, 592 F.3d 1237, 1260 (11th Cir. 2010)
("Postconviction relief proceedings do not require the full
range of procedural rights that are available at trial, and
Brady v. Maryland has no application in the postconviction
context.").   See also Franzen v. Brinkman, 877 F.2d 26, 26 (9th
Cir. 1989) ("[A] petition alleging errors in the state
post-conviction review process is not addressable through habeas
corpus proceedings."); Alston v. Department of Corr., 610 F.3d
1318, 1325-26 (11th Cir. 2010).

### IV Conclusion

Petitioner forfeited most of his federal habeas claims
by pleading guilty to the charges against him.   Petitioner has

not established that the guilty plea was not knowing or voluntary and, accordingly, the guilty plea was valid and Petitioner's waiver of his rights therein must be enforced. Additionally, Petitioner failed to exhaust some of his claims in the state courts and has not demonstrated cause for, nor prejudice arising from the procedural default of his claims. Some of Petitioner's federal habeas claims are not cognizable in a section 2254 action.

**IT IS THEREFORE RECOMMENDED** that Mr. Wilkins' Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

-42-

1     Failure to timely file objections to any factual or
2 legal determinations of the Magistrate Judge will be considered
3 a waiver of a party's right to de novo appellate consideration
4 of the issues.  See United States v. Reyna-Tapia, 328 F.3d 1114,
5 1121 (9th Cir. 2003) (en banc).  Failure to timely file
6 objections to any factual or legal determinations of the
7 Magistrate Judge will constitute a waiver of a party's right to
8 appellate review of the findings of fact and conclusions of law
9 in an order or judgment entered pursuant to the recommendation
10 of the Magistrate Judge.

11     Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District
12 Court must "issue or deny a certificate of appealability when it
13 enters a final order adverse to the applicant."  The undersigned
14 recommends that, should the Report and Recommendation be adopted
15 and, should Petitioner seek a certificate of appealability, a
16 certificate of appealability should be denied because Petitioner
17 has not made a substantial showing of the denial of a
18 constitutional right as required by 28 U.S.C.A § 2253(c)(2).

19     DATED this 6th day of September, 2011.

20
21                    _____
22                         Mark E. Aspey
                     United States Magistrate Judge
23
24
25
26
27
28                         -43-